## APPEAL OF HARROLDS MOTOR CAR CO.

Docket No. 6184.   Decided November 10, 1926.

1. Money advanced to a corporation for permanent improvements by its stockholders in proportion to their stockholdings and evidenced by promissory notes, *held* not to be invested capital prior to the date when stock was issued in payment of such advances.

2. Interest credited on such advances *held* to be a proper deduction.

*H. W. Forbes, Esq.,* and *M. E. Peloubet, C. P. A.,* for the petitioner.

*B. G. Simpich, Esq.,* for the Commissioner.

The petitioner appeals from the determination of a deficiency of $11,101.53 in income and profits taxes for 1919, alleging error in computing the invested capital of a subsidiary company with which it is affiliated.

FINDINGS OF FACT.

In 1912, the taxpayer was the distributing agent in New York City for Pierce Arrow cars. It had only two stockholders, Robert D. Garden, who owned two-thirds of its stock, and S. A. Miles, who owned one-third of its stock.

By agreement with the Pierce Arrow Co. the taxpayer was required to maintain a service station for Pierce Arrow cars and trucks. In order to provide such service station, the two stockholders organized the Arrow Motor Realty Co. in 1912, with an authorized capital stock of $3,000, which was subscribed and paid for by Garden and Miles in the same proportions in which they owned the stock of the taxpayer.

The Realty Company immediately purchased property and proceeded to construct a service station, which was thereafter operated by the taxpayer.

Between $360,000 and $370,000 was spent for the service station. A part of the money was raised upon bond and mortgage and the balance was advanced by the two stockholders from time to time in the same proportions in which they owned stock, namely, two-thirds by Garden and one-third by Miles. Such advances were credited upon the books of the Realty Company to the personal accounts of the two stockholders, and from time to time amounts were transferred therefrom to a bills payable account and notes issued to the stockholders. The greater part of the money was advanced prior to March 1, 1914, and notes were issued therefor upon which interest at the rate of 6 per cent per annum was credited monthly to these stockholders on their personal accounts.

In May, 1918, the authorized capital stock of the Realty Company was increased to $100,000, and $64,000 of such additional stock was issued to Garden and $32,000 to Miles in payment of the amounts standing to their credit on their personal accounts and of portions of the amounts shown in the bills payable account. On January 1, 1919, the unpaid balance of such advances, evidenced by notes, was $167,921.21. During 1919 interest at the rate of 6 per cent per annum was credited monthly to the stockholders. The amount so credited during 1919 for the period from January 1, 1919, to August 31, 1919, was $6,716.88.

Dividends on the capital stock at the rate of 6 per cent per annum were declared and paid annually.

On September 4, 1919, the Realty Company was merged with the taxpayer. On such merger additional stock was issued to the two stockholders in the proportions of two-thirds to Garden and one-third to Miles. Of such additional stock, $167,921.21 was issued in payment of the balances due to the two stockholders as shown in the bills payable account of the Realty Company.

From the time the Realty Company was organized in 1912 until the merger on September 4, 1919, the stock of both companies was owned by the two stockholders in the proportions of two-thirds and one-third, and the advances made by them to the Realty Company were always in the same proportions.

These two corporations filed one return. The Commissioner determined that the companies were affiliated prior to the merger and computed the deficiency accordingly.

In computing the deficiency, the Commissioner included the amount of $167,921.21 in invested capital only from September 4, 1919, and allowed no deduction from income for the amount of $6,716.88 credited during 1919 as interest on such amount.

The Commissioner, in computing the alleged deficiency, reduced invested capital by $92,717.48, being a pro rata amount of the income and excess-profits tax of the taxpayer for the year 1918, paid during 1919.

### OPINION.

PHILLIPS: It is not disputed that the taxpayer and the Arrow Motor Realty Co. were entitled to file a single return for the year involved. The principal contention of the taxpayer is that certain amounts advanced to the Arrow Company, for which stock was issued at the time a statutory merger of the two took place, were invested capital during the taxable year, and not borrowed capital as treated by the Commissioner.

The evidence discloses that for some six years these loans were evidenced by promissory notes upon which interest was credited monthly. To overcome this petitioner's counsel point to the uniform practice of the stockholders in making advances in accordance with stockholdings and to the testimony of one of the stockholders, who stated that he considered the advances not as loans but as a permanent investment for which stock would be issued " after we got it going." This is entirely consistent with the ruling of the Commissioner that such advances were borrowed capital until the stock was issued, and upon the entire record we are not convinced that such ruling was erroneous.

In its return petitioner treated the amounts so advanced as invested capital and in computing its net income failed to take any deduction for interest accrued and credited thereon. In eliminating these advances from invested capital the Commissioner overlooked the interest item and failed to allow it as a deduction. This is clearly error.

The adjustment of invested capital by a pro rata amount of the income and profits taxes of the preceding year is in accord with section 1207 of the Revenue Act of 1926, and the determination of the

Commissioner in this respect must be approved. *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

> *Decision redetermining the deficiency will be entered on 10 days' notice, under Rule 50.*